Katherine Curtin, Appellant, v. Ray Mann, Appellee.

Gen. No. 8,131.

420

Heard in this court at the October term, 1929. ▮ Opinion filed July 19, 1930.

HYER & GILL, for appellant.

WELSH & WELSH, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is an action on the case brought by Katherine Curtin, appellant, hereinafter referred to as plaintiff, against Ray Mann, appellee, hereinafter called defendant. The trial resulted in a verdict in favor of the defendant Mann, and after overruling motions for new trial and in arrest of judgment, the court entered judgment against the plaintiff for costs. The case is before this court on appeal.

The defendant owned two lots at the southwest corner of the intersection of 20th and Charles Streets in the City of Rockford. A small stream enters the premises about 60 feet south of the northeast corner of the property, flows in a westerly direction about 120 feet, then turns to the southwest. Over the stream the defendant had built a concrete flume or platform, extending it on to the southwest. The butment forms had not been put in for the extension. On the finished portion of the platform, piled up and scattered about, were sectional forms, reinforcing bars, lumber, etc., and near, or at the end of the platform, were two high piles of lumber or forms, and between them a passage way some three feet wide, extending to the end of the concrete off of which the plaintiff fell into the stream.

North of this stream, and south of Charles Street, defendant had erected a barbecue stand about 25' x 35'. To the west, and back of this stand, he had built a small building in which to roast meat. West of the main building, and a little south, was a tool house

about 12′ x 12′. There was to the west of the buildings a finished picket fence extending south from Charles Street to a point west of the tool house; then extending east toward the tool house were posts and stringers, ready to attach the pickets to complete the fence, the lower stringer being about 18″ from the ground, and the upper one about 5′. The ground is level and covered with cinders from Charles Street south to the fence, and back of the cinders is the stream. From the tool house to the east there is no fence.

The entrance to the barbecue stand was on the north side. There was no entrance from the south. There were toilet facilities inside the building but none on the outside. There was a white light on the southwest corner of the barbecue building and a row of colored lights ran along the roof to the front of the building.

Defendant had rented the barbecue plant and premises to one Lou Smalter, who was conducting it as a barbecue stand, defendant having no interest in the management of it.

Such was the situation on June 16, 1928, when plaintiff received the injury on which the suit is based.

The plaintiff's account of how the accident happened, as abstracted, is in substance as follows:

On June 16, 1928, I was with my husband, Mr. and Mrs. McBride, Miss Curtin and Miss O'Conner, driving along Charles Street. One of the girls suggested getting a barbecue. We turned into Bill's place. Some one said Lou had better sandwiches, so we turned and crossed the street and into Lou's yard. My husband was driving. The car was stopped on the west side of the barbecue, a little beyond the building where they roast the meat. Mr. McBride got out and went around in front to get the sandwiches. I said I wanted to go for a walk and did anyone want to come. Mrs. McBride and I got out. I wanted to go to the

ladies' toilet. I had never been to this barbecue before, and did not know anything about the location of the toilets—whether they were inside or out. I walked around the southwest corner of the barbecue and walked on the cinders until I finally came to the concrete. There was no barricade or obstruction along the north side of the concrete that barricaded me from going into it. I saw nothing along the north side. When I walked on the concrete, I saw long pieces of lumber and reinforced pieces lying on the concrete. When I first got onto the concrete, they were not high, just seemed to be scattered pieces around there. As I went on there, I was looking for a toilet. I walked a little bit to the east, and looked around and didn't see any outside toilet, and I happened to turn and look west, and I saw these two lumber piles, piled up with about a three foot lane between them, and I said to Mrs. McBride: ''I am going behind those lumber piles,'' and she followed me, and I walked on pieces of steel that were between the lumber piles and kept on walking.

As I was going west, the lights were behind me and it was dark and I really could not see, and all I was looking for was a dark place, and thought behind the lumber pile was where I could go, and I walked and finally dropped right off. There was a shadow or dark place between these two piles, and I was going there for the purpose of relieving myself from a call of nature. There was no barricade in between these piles which interfered with me walking between them. There were pieces of steel that I walked on and I did not see the hole as I was walking in between the two piles of lumber and didn't know there was an end to that cement or that there was a hole there. I didn't know it was a creek bottom. I had never been out there in daytime, nor at night. I didn't know whether there was a toilet inside the barbecue. I didn't ask

anyone where there was a toilet or if there were toilet facilities. I had never been there before and didn't know anybody. The reason I went onto the slab and and into the dark place by the lumber was to answer a call of nature and I did it of my own volition. It wasn't necessary to go across this flume on the cement platform in order to get from the car to the barbecue property for the purpose of buying sandwiches. When I came to the piles of lumber or the aisle between them, I saw it was dark ahead of me, and I went voluntarily into that darkness.

The defendant introduced no evidence, and there is no contradiction of Mrs. Curtain's evidence in the record. Plaintiff was severely injured. The record discloses, and it is conceded, that the point at which the accident occurred was not on any part of the premises leased to Smalter.

The theory of the plaintiff seems to be that because appellee owned the premises where the barbecue was being operated by his tenant, and the premises on which the accident occurred adjoining them, the landlord not only impliedly invited the public to come upon the leased premises to deal with and purchase food and drinks of his tenant, but also impliedly invited any member of the public who came to trade with his tenant, to come upon the connecting premises belonging to the landlord to answer nature's call, and having so extended the invitation the law made it his duty to keep the connecting premises safe for that purpose.

The bare statement of this theory ought to be sufficient to refute it, but authority refuting it is not lacking. In *Morong v. Spofford*, reported in L. R. A. 1915 B, 387, Spofford owned the building. A tenant had a milliner store on the second floor. The plaintiff visited the store as a customer, found no one in, and was injured while attempting to leave by a back stairway, of which defendant had retained possession

when he leased the store room. The court sums up the case in the following language:—

"While there was an implied invitation from the defendant, as the owner of the premises, to the plaintiff to use the front stairway and landing leading to the Gilchrist store, and the defendant owed her the duty of exercising reasonable care to provide safe and suitable approaches thereto, we are of opinion there is no evidence which would warrant a finding that there was any invitation from the defendant to the plaintiff to open or pass through the door leading down the rear stairway, and that the defendant owed her no duty to keep the door locked. It could not be found that she had a right to assume, as the door was not locked, that it was intended that she might use it as a means of ingress to, or egress from, the premises."

There being in law no invitation to come upon the unleased premises, there is no legal duty to keep them in safe condition for use by uninvited persons.

Plaintiff puts forth another theory on which she says she should recover. Under the head "Excavations" in her brief, she says:—"A. It is a well settled rule of law that a landowner is liable for an injury caused to a traveler by an excavation so close to a public road as to endanger those using the road in a reasonable manner and with reasonable care." "B. The above rule applies particularly where the situation is likely to mislead the traveler." "C. Same rule applies to private ways." She then concludes "D. Logically, and with more force than in the case of a private way, the rule applies to excavations adjacent to a place of public resort; particularly where the defendant is landlord of the resort premises."

The trial court permitted the case to go to the jury on this last theory.

Now, let us see what plaintiff was required to prove to bring her case within the law as thus stated by her. First: It would be necessary to show that the exca-

vation was so close to the place of public resort as to endanger those using the place in a reasonable manner and with reasonable care, and that the plaintiff, while so using it, and in consequence of its closeness, fell into it and was injured, or, second: That the situation was such as to mislead plaintiff, while using the place of public resort in a reasonable manner and with reasonable care, into the belief that the place of public resort covered the premises on which the excavation existed, and in consequence thereof she was misled into walking into the excavation and receiving injury, or, third: That there was a definite private way upon the premises of public resort; that she was using said private way in a reasonable manner and with reasonable care, and in consequence of such excavation being so close to such way, she fell into it and was injured; or fourth: That the defendant knew, or should have known that his premises adjacent to the place of public resort were being so constantly and habitually used by the patrons of the resort for some private purpose or convenience that the law would presume such use was with his leave or license, and with that knowledge he created a pit for such patrons to fall into, and that while plaintiff was availing herself of such license in a reasonable manner and with reasonable care, she fell into the pit and was injured.

In vol. 45 Corpus Juris, 860, par. 285, the following rule is announced:

"If the owner of land makes an excavation thereon adjacent to a highway, or so near as to make the use of the highway unsafe or dangerous, he will be liable to a traveler who, while using ordinary care, falls into it and is injured. And liability is held to extend to cases where, although the excavation is some feet from the highway, the line of the street is indefinite by reason of the intervening space being paved, as well as to cases where one in attempting to pass an obstacle placed on the sidewalk passes onto defend-

ant's land and falls into the excavation. Conversely, liability does not exist under this rule where the excavation is neither adjacent to the highway or sidewalk nor so close as to make the ordinary and proper use of the highway or sidewalk unsafe or dangerous; nor does liability exist when the excavation is made at such a distance from the street or highway that a person falling into it would be a trespasser before he reached it. And regardless of whether or not the excavation is so near the highway as to render the owner liable to persons injured while lawfully using it, he is not liable to a person who is injured after he reaches the excavation by crossing other premises, or while he is not attempting to follow the highway or where his departure from the traveled way is not accidental or inadvertent.''

We are of the opinion the jury was fully justified in finding that the proof failed to establish any of these theories.

On the question of contributory negligence we merely suggest that while one may expect a place of public resort to have toilet facilities, if they were not in view it would seem that the reasonable thing for a prudent patron, desiring to use them, to do, would be to inquire as to their location, and that an unreasonable and careless thing to do would be to wander around in the dark in search of them over a place covered with material plainly indicating that construction work was in progress or unfinished. Such places are not noted for their safety.

Plaintiff insists the trial court erred grievously in rejecting the evidence of two witnesses that they fell into the same excavation or pit. Waiving the failure to show or offer to show that the premises were in the same condition when these witnesses fell in as when the plaintiff fell in, the rejection of the testimony could work no injury to the plaintiff's cause.

It was offered for two purposes, first, as tending to show defendant's knowledge of the situation, and second, to show that it was a dangerous one.

The defendant, called as a witness for plaintiff, had already testified that he was around there practically every day and showed by his testimony that he was familiar with the fact the pit or jump-off was there. Hence, evidence tending to show his knowledge would add nothing, would be useless, a mere gesture and wholly immaterial for the purpose offered. Its value as proof that the place was a dangerous one to fall into is nil. It is a matter of common knowledge that any one falling into or stepping into an excavation like this one is likely to be injured thereby, although so far as the record shows the two witnesses whose testimony was rejected escaped without injury when they fell in. The rejection of this testimony was fully justified.

Complaint is made of the introduction of a plat and the repetition in instructions of the rule requiring the plaintiff to exercise ordinary care; of the giving of certain instructions on the part of appellant and the refusal and modification of certain of plaintiff's instructions.

The plat was produced and identified by plaintiff's witness and its inaccuracies pointed out and explained by him. It is not contended that it failed to show, in a general way, the situation, and with the explanations about it in the record it is difficult to see how it could have affected the verdict.

While repetition of a point or principle in a set of instructions is looked upon with disfavor, the mere repetition seldom, if ever, constitutes reversible error.

We have examined and considered the matters complained of, and the authorities cited, and find in them no sufficient basis for a reversal of the judgment in this case, and it is accordingly affirmed.

*Judgment affirmed.*